**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger**

Civil Action No. 17-cv-02537-MSK-SKC

**ROBERT BURGARD,**

 Plaintiff,

vs.

**CARLOS MORALES,**

 Defendant.

___

**OPINION AND ORDER DENYING MOTION TO EXCLUDE OPINION TESTIMONY**
___

  **THIS MATTER** comes before the Court pursuant to Mr. Morales' Motion to Exclude **(# 85)** certain opinion testimony from John Dahlberg, Mr. Burgard's response **(# 86)**, and Mr. Morales' reply **(# 87)**.

  Mr. Burgard was injured in a workplace accident in 2015 when a forklift, driven by Mr. Morales, pinned him against another piece of equipment. Due to his injuries, Mr. Burgard's left leg was amputated above the knee. In this action, Mr. Burgard asserts a claim against Mr. Morales sounding in negligence.

  Mr. Burgard has endorsed John Dahlberg as an expert witness pursuant to Fed. R. Civ. P. 26(a)(2) to provide opinion testimony as to "anticipated annual medical and rehabilitative expenses" (also referred to as a "life care plan") that Mr. Burgard is expected to experience as a result of his injury. The Court will discuss the nature of Mr. Dahlberg's specific opinions as part of its analysis.

1

In the instant motion **(# 85)**, Mr. Morales moves to exclude: (i) any portion of Mr. Dahlberg's opinions that were derived from Mr. Dahlberg's discussions with Eric Pickering, Mr. Burgard's prosthetist, insofar as Mr. Burgard did not separately identify Mr. Pickering as an expert witness; (ii) all testimony by Mr. Dahlberg, insofar as Mr. Dahlberg's expertise is limited to spinal cord injuries, whereas Mr. Burgard's injury was not such an injury; (iii) that Mr. Dahlberg has not articulated a reliable methodology for two of his opinions (relating to his opinion regarding future medical and other expenses and his opinion as to the discounted present value of those expenses); (iv) that Mr. Dahlberg's opinions regarding certain matters should be excluded as irrelevant under Fed. R. Evid. 401 and 402 because those opinions turn on facts that are inconsistent with facts testified to by Mr. Burgard himself; and (v) that Mr. Dahlberg's opinions should be excluded under Fed. R. Evid. 403 because they are more prejudicial than probative.

**A. Opinions derived from undisclosed experts**

Mr. Dahlberg's report explains that Mr. Dahlberg consulted with Mr. Pickering as follows:

> [Mr. Burgard] has worked extensively with his prosthesist, Eric Pickering, C.P. Mr. Pickering has designed a prosthetic for [Mr. Burgard] with a microprocessor knee to provide him with the most current technology available. The advent of computer-assisted prosthetics has become a standard of care for functional amputees such as [Mr. Burgard], who has been rated at a K4 level of functional by his physiatrist. With the use of his computer-assisted knee (C-leg), Mr. Pickering believes that [Mr. Burgard] will be able to once again walk in the woods as he has stated he would like to. Mr. Pickering has provided the prices and replacement rates for the various components that go into [Mr. Burgard's] prosthesis. Mr. Pickering informed me that [Mr. Burgard] would be replacing his current prosthesis in the spring of 2019. [Mr. Burgard] will then be able to keep his old prosthesis as a backup should he develop problems with his current daily prosthesis.

Mr. Dahlberg's report goes on to quantify certain expenses that Mr. Burgard is expected to have over his lifetime relating to his prosthesis. It is clear that Mr. Dahlberg relies almost entirely on Mr. Pickering's estimates for these expenses. Specifically, Mr. Dahlberg's report states:

> 1. As previously indicated, [Mr. Burgard] has been fitted with a C-leg prosthesis that includes a microprocessor knee, vertical shock pylon/foot, and vacuum-assisted suspension. The purchase price of this prosthesis is $81,654 and [Mr. Burgard] can expect to replace this prosthesis every 3-5 years. [Mr. Dahlberg states that the amortized annual cost of this expense will be $20,413.50.]
>
> 2. The prosthetic that [Mr. Burgard] has has a three-year warranty on the microprocessor knee for service. After the three year warranty expires, Mr. Pickering has estimated that the service charge for maintaining this knee in operable condition is $3,000-$10,000. This cost will recur every four years and is therefore amortized at $1,625.00.
>
> 3. Mr. Pickering has said that [Mr. Burgard] will need to replace the socket for this prosthesis every 3-5 years. The replacement cost of this socket is $16,500, amortized over four years is $4,125.00.
>
> 4. Mr. Pickering estimates that on an annual basis, Mr. Burgard will need to purchase supplies including 2 gel socks, 2 lines, 3 one seals, 10 prosthetic socks, and 3 bottles of Alps Cleaner at a cost of $2,750.

Mr. Morales notes that Mr. Burgard did not include Mr. Pickering as an expert witness in his Fed. R. Civ. P. 26 disclosures, and has provided no report from Mr. Pickering regarding Mr. Pickering's opinions. Thus, Mr. Morales moves to exclude any opinion testimony from Mr. Dahlberg that incorporates Mr. Pickering's undisclosed opinions.

It is axiomatic that a party who fails to timely disclose the identity of an expert witness and the bases for that witness' opinions as required by Fed. R. Civ. P. 26(a)(2) will be prevented from offering those opinions at trial. Thus, it would seem that Mr. Burgard is prevented from offering any opinion testimony from <u>Mr. Pickering</u> at trial. But that argument begs the question

as to whether the statements made by Mr. Pickering to Mr. Dahlberg, and incorporated in Mr. Dahlberg's report, are opinion testimony in the first instance. Mr. Pickering is Mr. Burgard's treating prosthesist. Thus, if Mr. Pickering were asked to give testimony about the cost and expected lifespan of Mr. Burgard's actual prosthesis (and its various components and accessories) that testimony would very likely be <u>percipient</u>, not opinion, testimony. *See e.g. Gomez v. Rivera Rodriguez*, 344 F.3d 103, 113 (1st Cir. 2003) ("a treating physician, testifying as to his consultation with or treatment of a patient, is not an expert witness for purposes of Rule 26"); *Sprayregen v. A. Gugliotta Development, Inc.*, 166 F.Supp.3d 291, 302 (E.D.N.Y. 2016). Certainly, Mr. Pickering would know how much the prosthetic leg he prescribed to Mr. Burgard actually cost, and, as part of his calculus in selecting that leg over other potential treatments, he would very likely have knowledge of its expected lifespan and likely repair cost. As such, the failure to disclose Mr. Pickering as an expert under Rule 26(a)(2) would not render his percipient testimony on this point inadmissible.[1]

In this respect, Mr. Morales' reliance on *Owens v. U.S.*, 2017 WL 3841910 (D.Ky. Sept. 1, 2017) (slip op.), may be misplaced. *Owens* presented essentially the same facts as this case: the injured plaintiff sought to establish her "ongoing need for prosthetic devices" through the testimony of a "life care planner"; the planner, in turn, derived her opinions "concerning the frequency of prosthetics that might be necessary in the future, as well as the cost of those devices," through a "conversation with Mo Kenney of Kenney Orthopedics" who had not been separately disclosed as an expert. The trial court excluded the planner's testimony, finding that the planner could not "permissibly rely upon the opinion of another, undisclosed opinion

---

[1] Mr. Morales' motion does not specifically contend that Mr. Pickering was not properly identified as a potential percipient witness, such that his testimony could be excluded under Rule 26(a)(1), and the Court does not consider that question.

witness—here in the field of prosthetics—to determine what prosthetics will be necessary over time and at what cost." But nothing in *Owens* indicates that Kenney Orthopedics was the plaintiff's actual treating provider, rather than a third party with no actual knowledge about the plaintiff's actual treatment. Here, if Mr. Pickering were a third party prosthesist, unfamiliar with the specific care provided to Mr. Burgard and serving only as a post-hoc consultant to Mr. Dahlberg, this Court might reach the same outcome as *Owens*. But because Mr. Pickering was personally involved in selecting a prosthesis for Mr. Burgard, his testimony about the factors that went into selecting that prosthesis is as a percipient, not expert, witness.

Thus, this Court does not necessarily accept the premise of Mr. Morales' motion: that Mr. Pickering's testimony, if offered, would be inadmissible opinion testimony. But even assuming that it is, Mr. Burgard argues that, pursuant to Fed. R. Evid. 703, Mr. Dahlberg may rely upon Mr. Pickering's opinions – even undisclosed ones -- in formulating his own opinions. Rule 703 states:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

In *U.S. v Nacchio*, 519 F.3d 1140, 1156 (10th Cir. 2008), the court explained that Rule 703 "permits an expert to base an opinion on any facts or data, <u>admissible or not</u>, which are of a type reasonably relied on by experts in the particular field." (Emphasis in original.)

Before the Court can consider the application of Rule 703 to Mr. Dahlberg's opinions, it must first unpack what those opinions are and how Mr. Dahlberg reached them. Mr. Dahlberg's

5

report[2] reflects that Mr. Dahlberg is presently engaged as a Rehabilitation Consultant, "specializing in life care planning and case management involving catastrophic injuries." He has been engaged in that business since 1981. His report indicates that he was asked by Mr. Burgard "to assess the injuries and resultant disabilities that Mr. Burgard will likely experience" due to the amputation. He characterizes his report as containing a "Life Care Plan [that] analyzes the future extraordinary needs and associated costs that Mr. Burgard will experience." The bulk of Mr. Dahlberg's report is similar to the portion quoted above: Mr. Dahlberg identifies various items and services that he believes Mr. Burgard will need to obtain in the future because of his injury and Mr. Dahlberg then estimates the annual costs that Mr. Burgard will incur in obtaining those items and services.

Mr. Dahlberg does not describe any particular methodology he applied in formulating his opinions. It appears that Mr. Dahlberg is offering what the Court sometimes refers to as an "experiential opinion" – that is, one that is informed not by scientific methods or rigid formulae that can be stated expressly, but rather one that is based simply on the expert's accumulated experience in the field. In some fields, experience alone is the "predominant, if not sole, basis for a great deal of reliable expert testimony." *U.S. v. Crabbe*, 556 F.Supp.2d 1217, 1221 (D.Colo. 2008), *citing* Advisory Committee Notes to 2000 Amendments to Rule 703.

Here, Mr. Dahlberg's opinions that involve information from Mr. Pickering relate to the cost and durability of Mr. Burgard's prosthetic leg. It does not appear from the report that Mr. Dahlberg professes to have his own independent knowledge or experience about such matters, as his report states that "Mr. Pickering has provided the prices and replacement rates" for the

---

[2] Mr. Dahlberg was not deposed in this case, nor has he submitted any affidavit or any other evidentiary material explaining his qualifications, experience, and methodology beyond that which is set forth in his report.

components of Mr. Burgard's prosthesis. Mr. Dahlberg's report does not go on to state something like "the information provided by Mr. Pickering is consistent with my own personal experience in pricing prostheses of this type." Rather, it appears that Mr. Dahlberg simply took Mr. Pickering's figures and converted them to annual costs, a task that requires no expertise or experience other than perhaps a pocket calculator.

In this sense, the Court has some doubt that Mr. Dahlberg's testimony about the costs and durability of Mr. Burgard's prosthesis is opinion testimony governed by Rule 702 at all. Nothing in Mr. Dahlberg's report suggests that Mr. Dahlberg brought his own experience and knowledge as a Rehabilitation Consultant into play in formulating the "opinions" quoted above. Rather, the report seems to indicate that, for each of the enumerated items, he simply asked Mr. Pickering about such costs and lifespans and recorded Mr. Pickering's responses, then performed some routine mathematical calculations. In short, Mr. Dahlberg was no more than a scribe, bringing no independent expertise to the formulation of the opinions in question. To the extent that Mr. Burgard wished to present opinion testimony about such costs, it would be Mr. Pickering, not Mr. Dahlberg, who has the qualifications to offer such opinions.

At the same time, it may be that the ordinary practice of the skill of Rehabilitation Consulting sometimes involves asking others' opinions about costs and durability of certain items. Put differently, the "methodology" that Mr. Dahlberg applies overall may sometimes entail the Rehabilitation Consultant simply being such a scribe. Take the example of a general contractor who is asked to opine about the cost of building a house. The contractor might ask a retailer for an estimate as to how much the kitchen appliances will cost for the project and simply incorporate the retailer's estimate into the contractor's overall price. A court would be unlikely to reject the contractor as an expert simply because one component of his overall opinion as to

construction price was derived entirely from the opinion of someone else. Indeed, that is precisely what Rule 703 contemplates: "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject," the underlying facts and data may be admissible when wrapped up within the opinion, even if they would not be admissible on their own.

Thus, the burden is on Mr. Burgard to establish that Rehabilitation Consultants would reasonably rely on estimates from a prosthesist about the cost and durability of a prosthesis when formulating an overall life care plan. *See U.S. v. Banks*, 761 F.3d 1163, 1200 (10th Cir. 2014) (the proponent of an expert bears the burden of proving that the proffered testimony is admissible). Admittedly, nothing in Mr. Dahlberg's report expressly states as much. But the Court can reasonably infer that it is common practice for a Rehabilitation Consultant to solicit data and opinions from a client's own medical providers when attempting to determine the cost and durability of that provider's own treatments. Certainly, Mr. Morales has not come forward with any evidence to suggest that this would be an unusual thing for a Rehabilitation Consultant to do. In such circumstances, the Court finds that Mr. Burgard has carried – at least at this point in time[3] – his burden of demonstrating that consulting with others and folding their opinions into a life care plan is a task that Rehabilitation Consultants generally perform. As such, Rule 703 permits Mr. Dahlberg to incorporate Mr. Pickering's opinions into his own opinion and to testify thereto.[4] And, of course, Mr. Morales is free to cross-examine Mr. Dahlberg to elicit whether

---

[3] Should Mr. Morales adduce evidence at trial, from Mr. Dahlberg or other Rehabilitation Consultants, that such a practice is outside the typical practice of Rehabilitation Consultants, Mr. Morales can certainly request that the trial court reconsider this ruling and strike or exclude Mr. Dahlberg's opinions derived from Mr. Pickering.

[4] The parties have not specifically explicated how Mr. Dahlberg's testimony will be elicited, and thus, this Court expresses no opinion as to whether Mr. Dahlberg should be

8

Mr. Dahlberg has any independent basis to believe the accuracy of Mr. Pickering's estimates, or even to call Mr. Pickering himself and examine him about the accuracy and reliability of his statements to Mr. Dahlberg.

As to the Rule 703 issue, once again, Mr. Morales' reliance on *Owens* is misplaced. *Owens* did not consider, much less attempt to apply, Rule 703. Thus, its persuasive value here is limited.

Accordingly, Mr. Morales' motion to exclude Mr. Dahlberg's opinions derived from discussions with Mr. Pickering is denied.

### B. Qualifications

Mr. Morales next argues that Mr. Dahlberg is not qualified to serve as an expert under Rule 702 because he "possesses no apparent qualifications or expertise" in addressing the needs of individuals with non-spinal cord injuries such as Mr. Burgard.

The Court need not extensively consider this argument because it springs from a flawed premise: that Mr. Dahlberg's experience is limited to persons with spinal cord injuries. Mr. Dahlberg's curriculum vitae describes his work as a Rehabilitation Consultant as involving "over 3,000" patients with catastrophic injuries, "includ[ing] but [ ] not limited to Adult Brain Injured, Spinal Cord Injured, Pediatric Brain Damage, and Amputees and Severe Burns." (Emphasis added.) Nothing in Mr. Dahlberg's credentials suggest that his practice is limited to persons with spinal cord injuries, much less that there is any material difference between the sort of life care

---

permitted to recite, on direct examination, the particular figures given to him by Mr. Pickering. Because Mr. Pickering's own undisclosed opinions would be inadmissible if offered independently of Mr. Dahlberg's opinion, the last sentence of Rule 703 would seem to require the trial court to make an independent determination of admissibility under Fed. R. Evid. 403 if Mr. Dahlberg sought to testify about what, specifically, Mr. Pickering told him. The parties have not briefed the Rule 403 component of such testimony and this Court makes no findings on that issue.

plan that Mr. Dahlberg would create for a spinal cord-injured client and one whose injuries more closely resemble Mr. Burgard's. Mr. Morales' motion on this point is denied.

### C. Methodology

Mr. Morales challenges the sufficiency of Mr. Dahlberg's methodology as it relates to two particular opinions, which Mr. Morales has identified as "Opinion One" and "Opinion Five," although upon closer examination of Mr. Morales' argument and Mr. Dahlberg's reports, the opinions appear to be one and the same. The opinion consists of the entirety of Mr. Dahlberg's "life care plan" for Mr. Burgard – that is, each and every conclusion that Mr. Burgard will require various items and services for the remainder of his life, as well as the anticipated cost of those services. More specifically, Mr. Dahlberg's report breaks his opinions down into 10 categories of items of services that Mr. Burgard will be expected to require in the future, as well as their corresponding costs: (i) the annual cost of medications that physicians have prescribed for Mr. Burgard to take, presumably for the rest of his life; (ii) the annual cost of "medical supplies" – namely, Benedryl cream and "adult wipes"; it appears that the need for these items is derived from Mr. Dahlberg's discussions with Mr. Burgard himself; (iii) the cost of "durable medical equipment," a category that encompasses costs relating to Mr. Burgard's prosthetic leg, as well as his future need for more ordinary ambulatory aids such as canes, crutches, and wheelchairs, as well as a wheelchair-accessible van; (iv) anticipated costs of medical procedures that Mr. Burgard is expected to undergo annually, namely, consultations with an ophthalmologist and cardiologist (to follow up on complications that arose during his amputation surgeries) as well as increased visits to his primary care physician resulting from Mr. Dahlberg's opinion that Mr. Burgard will suffer more frequent injuries due to falls while ambulating; (v) the cost for household assistance, namely housecleaning, lawn maintenance, and painting services, as Mr.

Burgard is less able to perform those tasks himself; (vi) the cost of psychological counseling that Mr. Dahlberg recommends Mr. Burgard undergo; (vii) costs for "recreation," consisting of Mr. Dahlberg's belief that Mr. Burgard should obtain an all-terrain vehicle to allow him to return to his preferred recreation of hunting, fishing, and camping; (viii) the cost of certain disability-related publications to which Mr. Dahlberg recommends Mr. Burgard subscribe; (ix) the cost of meetings with a case manager "to ensure that he is achieving maximum benefit and coordination from any medical or rehabilitation efforts"; and (x) costs of retrofitting or acquiring wheelchair-accessible housing. Mr. Dahlberg's report references an "attached Appendix" that lists "those vendors utilized in pricing items in this report," although the Appendix has not been included in the copy of Mr. Dahlberg's report filed with the Court.

Mr. Morales contends that Mr. Dahlberg has failed to adequately disclose a reliable methodology for reaching the opinion because the opinion addresses items of future medical treatment and cost and Mr. Dahlberg has not indicated whether he conferred with Mr. Burgard's treating providers (other than Mr. Pickering) about Mr. Burgard's continuing medical needs when formulating that opinion. Mr. Morales also objects that Mr. Dahlberg has not identified the source of the "financial/cost data" that Mr. Dahlberg relied upon in fixing prices for various items.

Rule 702(c) requires that the testimony of a proffered expert be "the product of reliable principles and methods." Once again, Mr. Burgard, as the proponent of Mr. Dahlberg's testimony, bears the burden of proving that Mr. Dahlberg's opinions are the product of a reliable methodology. In some respects, Mr. Morales' objection is well-taken: Mr. Dahlberg's report does not expressly describe, in detail, the process by which a Rehabilitation Consultant creates a "life care plan," much less indicate that Mr. Dahlberg followed that process in this instance. But

11

that objection is largely a superficial one. A review of Mr. Dahlberg's report allows the Court to infer the general methodology that Mr. Dahlberg used: Mr. Dahlberg reviewed various aspects of Mr. Burgard's post-amputation life to determine which future needs he would have involve items and services related to that amputation and the expected costs of obtaining those items and services. And Mr. Dahlberg's report is clear as to the specific information that he consulted in reaching his opinion, namely that Mr. Dahlberg reviewed various medical records for Mr. Burgard, and spoke to Mr. Burgard and Mr. Pickering.

Although Mr. Burgard has not adduced any evidence that this methodology is one commonly used by Rehabilitation Consultants generally, the process is a simple one with an obvious, intuitive degree of reliability. Even a lay person can step through Mr. Dahlberg's categories and line items and consider whether the product or service being discussed is one that Mr. Burgard would legitimately need, whether that need derives from his amputation, and whether the cost seems reasonable in light of common experience and supporting evidence. Most notably, Mr. Morales has not pointed to any evidence from other Rehabilitation Consultants suggesting that Mr. Dahlberg's methodology is foreign to or discredited within that industry. To be sure, there are elements of Mr. Dahlberg's opinion that engender skepticism. Among other things, Mr. Dahlberg seems to assume that Mr. Burgard's current medication regimen will remain necessary indefinitely into the future, that Mr. Burgard will want to meet with a case manager weekly in perpetuity, and that Mr. Burgard will require interior and exterior housepainting services every 3-5 years. But so long as the methodology Mr. Dahlberg applied generally produces a reliable outcome, the question of whether these or other individual items are reasonable and well-grounded present questions of the <u>weight</u> to be given to Mr. Dahlberg's

opinions, not their admissibility. *See 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1246 (10th Cir. 2013).

Turning to Mr. Morales' specific objections, the Court cannot say that Mr. Dahlberg's methodology is not generally reliable simply because Mr. Dahlberg chose to review medical records to determine Mr. Burgard's medication regimen, rather than speak to Mr. Burgard's various medical providers. It may be presumptuous for Mr. Dahlberg – who lacks any apparent medical credentials – to assume that that medication regimen would continue indefinitely, but once again, that is a matter of the weight to be given to Mr. Dahlberg's opinion, not a defect in its general reliability. Likewise, Mr. Dahlberg may have assumed too much in concluding that documented ophthalmological and cardiac complications that occurred during Mr. Burgard's surgeries will justify indefinite annual checkups with those specialists, but again, this is an issue of weight to be considered by the jury. The vast majority of Mr. Dahlberg's care plan for Mr. Burgard involves non-medical expenditures – non-prescription mobility aids and household goods and services – for which no consultation with medical providers would appear to be necessary. As to Mr. Morales' objection that Mr. Dahlberg did not identify the sources of his cost estimates, Mr. Dahlberg's report specifically states that such data is provided in an appendix. Although that appendix does not appear in the version of the report filed with the Court, Mr. Morales has not contended that no such appendix was supplied to him.

Mr. Morales' citations to cases such as in which courts excluded opinion testimony from life care planners are not persuasive. In *Queen v. W.I.C.*, *Inc.*, 2017 WL 3872180 (S.D.Ill. Sept. 5, 2017) (slip op.), the court excluded opinion testimony from a life care planner who recommended numerous specific medical treatments (*e.g.* "intersegmental traction, electrical stimulation, . . . trigger point injections, steroid injections, and anesthetic blocks") that had not

13

been ordered by the plaintiff's treating providers. The court noted that the planner had not conducted any tests on the plaintiff to reach his conclusions, nor had he consulted with the plaintiff's other providers; he simply "relied on his template to develop the plan." Here, however, Mr. Dahlberg has not recommended any specific medical procedures for Mr. Burgard to undergo, other than to continue an existing regimen of prescribed medication and to continue to have general consultations with specialists. In *Rinker v. Carnival Corp.*, 2012 WL 37381 (S.D.Fl. Jan. 6, 2002) (slip op.), the proffered life care planner's opinions were excluded, in part, because the planner "did not speak with the plaintiff's doctors or plaintiff" herself, and had made fundamental errors in his assessment because he assumed the plaintiff would have a normal life expectancy when, in fact, she had been diagnosed with stage three colon cancer. Here, Mr. Dahlberg spoke with both Mr. Burgard and Mr. Pickering. In *Gibson v. CSX Transportation, Inc,.*, 2008 WL 11355393 (N.D.N.Y. Nov. 3, 2008), the court excluded the planner's opinions because the planner was unable to estimate the costs of future medical treatment the plaintiff was expected to have, and the planner just selected a ballpark cost estimate "out of thin air." Here, Mr. Dahlberg has identified the cost of each instance of treatment he expects Mr. Burgard to undergo and has, apparently, identified the basis for those estimates in the appendix to his report.

Accordingly, the Court rejects Mr. Morales' argument that Mr. Dahlberg's opinions lack a reliable methodology under Rule 702.

### D. Relevance

Mr. Morales argues that Mr. Dahlberg's opinions, even if admissible under Rule 702, should be excluded as irrelevant under Fed. R. Evid. 401 and 402 because Mr. Dahlberg's assumptions are inconsistent with Mr. Burgard's own testimony. Specifically, Mr. Morales points out: (i) Mr. Dahlberg opines that Mr. Burgard will eventually need a wheelchair-

accessible van, but Mr. Burgard testified that he currently drives himself in his own vehicle and no provider has told him that he will eventually need a modified vehicle; (ii) Mr. Dahlberg opines that Mr. Burgard will require ongoing psychological counseling but Mr. Burgard testified that he believes he is coping well with his situation and does not need psychological evaluation or treatment; and (iii) Mr. Dahlberg opined that Mr. Burgard will require extensive retrofitting of his home to accommodate wheelchair access, but Mr. Burgard testified that he can take care of his real property and is "very independent" and "likes to try things and experiment for himself."

The Court rejects Mr. Morales' argument that Mr. Burgard's testimony strips Mr. Dahlberg's opinions of their relevance. Any disparity between the two presents a matter of weight for the jury to consider in deciding whether to credit Mr. Dahlberg's opinions. Moreover, there is some room for daylight between Mr. Burgard's testimony about his current abilities and Mr. Dahlberg's opinions regarding services that Mr. Burgard may require in the future. For example, Mr. Dahlberg's report opines that Mr. Burgard's need for a wheelchair-accessible van and home retrofit will arise "[a]s [Mr. Burgard] ages . . . after approximately age 70." Thus, Mr. Burgard's testimony that he does not presently need such accommodations at age 64 does not necessarily render irrelevant Mr. Dahlberg's opinions about Mr. Burgard's future needs.

### E. Prejudice

Finally, Mr. Morales offers a generalized argument that admission of Mr. Dahlberg's opinions would violate Fed. R. Evid. 403 because the probative value of those opinions – beset as they are with the flaws cataloged above – renders them more prejudicial than probative. This argument essentially accumulates all of Mr. Morales' more specific arguments discussed above, and this Court rejects it for the same reasons that it rejects those individual arguments. The various defects cited in Mr. Dahlberg's report may provide fertile ground for cross-examination,

but they are not so pervasive and unreasonable that the probative value of those opinions is outweighed by unavoidable undue prejudice.

For the foregoing reasons, Mr. Morales' Motion to Exclude **(# 85)** is **DENIED**. The Court expects that this case will soon be transferred to another judge for purposes of trial. Upon the parties being notified of such transfer, they shall promptly contact the chambers of the transferee judge to schedule a Pretrial Conference

Dated this 7th day of May, 2020.

**BY THE COURT:**

_____

Marcia S. Krieger
Senior United States District Judge